# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

CYNTHIA ANN CAMARATA,
o/b/o C.R.C.,                                    Plaintiff,

v.                                                                    6:16-CV-923
                                                                         (ATB)

COMMISSIONER OF SOCIAL SECURITY,
                                                 Defendant.

---

DAVID A. EGHIGIAN, ESQ., for Plaintiff
ARIELLA R. ZOLTAN, SPECIAL ASS'T. U.S. ATTORNEY, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 7).

## I. **PROCEDURAL HISTORY**

Plaintiff Cynthia Ann Camarata filed an application for Supplemental Security Income ("SSI") payments on behalf of her daughter, C.R.C.[1], on October 4, 2013. (Administrative Transcript ("T.") at 222, 366-72). Plaintiff's application was initially denied on December 6, 2013, and she made a timely request for a hearing before an Administrative Law Judge ("ALJ"). (T. 240-48, 293-300). The hearing, at which C.R.C. appeared with plaintiff and legal counsel, was conducted by ALJ Julia D. Gibbs

---

[1] Throughout this decision, the child on whose behalf this action was brought will be generally referred to as "the claimant" or by her initials "C.R.C." Cynthia Ann Camarata, who commenced this action on behalf of her daughter, will generally be referred to as "plaintiff" or "C.R.C.'s mother."

on October 7, 2014. (T. 67-92).

On October 17, 2014, the ALJ issued a decision finding that C.R.C. was not disabled from the date of the application through the date of her decision. (T. 219-37). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on May 24, 2016. (T. 1-7).

## II. ISSUES IN CONTENTION

Plaintiff makes the following arguments:

(1) The Appeals Council failed to adequately consider new evidence related to C.R.C.'s mental impairments. (Pl.'s Br. at 5-7) (Dkt. No. 14).

(2) The ALJ's credibility finding regarding C.R.C.'s testimony was not supported by substantial evidence. (Pl.'s Br. at 7-8).

Defendant argues that the complaint should be dismissed, because the Appeals Council adequately considered the new evidence, and the Commissioner's decision was supported by substantial evidence. (Def.'s Br. at 4-14) (Dkt. No. 15). For the reasons stated below, this court agrees with the defendant and will dismiss the complaint. To the extent that plaintiff's new evidence documents a worsening of C.R.C.'s impairments since the ALJ's October 17, 2014 decision, the proper remedy is for plaintiff to submit a new application for benefits on C.R.C.'s behalf.

## III. FACTUAL OVERVIEW

The court will only briefly summarize the medical, educational, and other evidence, which is set forth at length in plaintiff's brief (Pl.'s Br. at 2-6) and in the ALJ's decision. (T. 226-32). Further relevant details are discussed below in the course

of analyzing the issues disputed by the parties.

Claimant C.R.C. is a female child, born in December 2001, who resided with her mother at all times relevant to this proceeding. (T. 225, 363). In September 2013, C.R.C. was involved in a rollover accident while riding an All Terrain Vehicle ("ATV"), and suffered the traumatic amputation of her left hand. (T. 267, 461). Efforts to reattach her hand were unsuccessful, but she was fitted with a prosthesis. (T. 469). After missing significant time due to her injury and rehabilitation, C.R.C. returned to school. (T. 286). On the date of the hearing, she was in the seventh grade. (T. 26).

At the hearing, C.R.C. testified that she was right handed, but had difficulties with many tasks due to the loss of her left hand, despite the prosthesis. (T. 268-83). These activities of daily living included dressing herself, styling her hair, tying her shoes, cutting food, opening jars, turning pages in a book or examination packet, and carrying books at school. (T. 267-77). C.R.C.'s mother testified that these difficulties continued even after her daughter was fitted with a more advanced "i-limb" prosthesis,[2] because C.R.C. was often unable to access the wireless internet signal necessary to manipulate this new prosthetic hand. (T. 291). C.R.C. had also been seeing a counselor for the past year to help with the anger and depression stemming from her injury. (T. 283, 502-503).

In April 2015, approximately six months after the ALJ's decision, C.R.C. was hospitalized for an emergency psychiatric evaluation after she told her mother that she

---

[2] The i-limb is a prosthetic hand designed to bend at the joints of each digit. The wearer can alter the grip pattern of the hand via a mobile device, such as an iPhone or tablet. http://www.touchbionics.com/products/how-i-limb-works

3

had suicidal thoughts. (T. 169). C.R.C. was hospitalized again in October 2015 after posting statements on social media about committing suicide. (T. 65). She reported that she had previously tried to choke or hang herself, and had engaged in self-cutting. (T. 59, 65). C.R.C. received in-patient psychiatric treatment, and continued to take prescribed psychiatric medication upon discharge. (T. 10-13). At the time of this treatment, plaintiff's request for review of the ALJ's decision was still pending before the Appeals Council. (T. 2).

## IV. APPLICABLE LAW

### A. Disability Standard

An individual under the age of eighteen is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). *See Hudson v. Astrue*, 1:06-CV-1342 (LEK/VEB), 2009 WL 1212114, at *3-4 (N.D.N.Y. Apr. 30, 2009) (discussing the standard for children's disability benefits). However, the definition provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity. . . ." 42 U.S.C. § 1382c(a)(3) (C)(ii).

The agency has developed a three-step process to be employed in determining whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 02 Civ. 3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003). The first step of the

4

test requires a determination of whether the child has engaged in substantial gainful activity. 20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488. If so, then by statute and by regulation, the child is ineligible for SSI benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, the second step of the test requires examination of whether he or she suffers from one or more medically determinable impairments that, either alone or in combination, are properly regarded as "severe," in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If the child is found to have a severe impairment, the Commissioner must then determine, at the third step, whether the impairment meets or equals a presumptively disabling condition identified in the listing of impairments set forth in 20 C.F.R. Pt. 404, Subpt. P., App. 1. *Id*. Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed impairment, and the twelve-month durational requirement is satisfied, the claimant will be found to be disabled. 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

"Functional" equivalence must be examined only if it is determined that the claimant's impairment does not meet or medically equal the criteria for a listed impairment. Analysis of functionality involves considering how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL

21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established by finding an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

**B.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine

whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012)); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera*, 697 F.3d at 151 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial

support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## V. **THE ALJ'S DECISION**

As the first step in her analysis, the ALJ found that C.R.C. had not engaged in substantial gainful activity since October 4, 2013, the filing date of the application for benefits. (T. 225). Next, the ALJ determined that the traumatic amputation of C.R.C.'s left hand qualified as a severe impairment. (*Id*.). At the third step, the ALJ found that C.R.C. did not have an impairment or a combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. § 404, Subpt. P, App. 1. (T. 28). The ALJ continued her analysis, and found that C.R.C. did not have an impairment or combination of impairments that functionally equaled the severity of a Listed Impairment under the regulations. (T. 225-27).

In making her functional equivalence determination, the ALJ considered the medical evidence, C.R.C.'s school records, a teacher evaluation, and correspondence from C.R.C.'s mental health therapist. (*Id*.). Based upon her review of the evidence, the

8

ALJ found that C.R.C. had a "less than marked limitation" in all of the applicable functional domains: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for herself; and health and physical well-being. (T. 227-32).

The ALJ also evaluated C.R.C.'s hearing testimony, and concluded that her statements about the intensity, persistence, and limiting effects of her impairments were not entirely credible, because they were inconsistent with the record evidence. (T. 227-32). Because C.R.C. did not have "marked" limitations in two or more of the functional domains, and did not have an "extreme" limitation in any one domain, the ALJ concluded that C.R.C. was not disabled from the date of the application for benefits. (T. 232).

## VI. NEW EVIDENCE SUBMITTED TO APPEALS COUNCIL

### A. Legal Standard

The regulations provide that the Appeals Council considers new and material evidence if it relates to the period on or before the date of the ALJ's decision. 20 C.F.R. § 404.976(b)(1). *See Jenkins v. Colvin*, No. 1:13-CV-1035 (GLS), 2015 WL 729691, at *5 (N.D.N.Y. Feb. 19, 2015) (citation omitted). If the Appeals Council finds that the evidence is new and material, it will review the case if it finds that the ALJ's decision is contrary to the weight of the current record evidence. *Id.* (citing 20 C.F.R. § 404.970 (b). Even if the Appeals Council finds that the evidence is not new and material and declines to review the ALJ's decision, the evidence in question becomes part of the record for review by the court. *Id.* (citing *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir.

1996). If the Appeals Council denies review after reviewing the new evidence, the Commissioner's decision includes the Appeals Council's conclusion that the ALJ's findings remain correct despite the new evidence. *Id.*

**B.     Application**

Plaintiff timely requested Appeals Council review of the ALJ's decision. (T. 216). While this request was pending, plaintiff submitted additional evidence consisting of more than two hundred pages of hospitalization and psychiatric treatment records covering the period from February 10, 2015 to November 12, 2015. (T. 8-215). These records documented two separate incidents in which C.R.C. expressed suicidal thoughts, including one suicide attempt. (T. 23, 59, 165, 170). The related treatment notes indicated that C.R.C. had become increasingly angry and depressed by bullying at school that targeted her physical impairment, and had been prescribed medication for depression, anxiety, and PTSD. (T. 8, 10, 15, 23, 33).

On May 24, 2016, the Appeals Council denied plaintiff's request for review, and found that the new evidence did not impact the ALJ's determination of disability dated October 17, 2014. (T. 2). Plaintiff contends that this new psychiatric evidence offers additional information to support C.R.C.'s hearing testimony that she felt depressed and angry as a result of her accident. Specifically, plaintiff contends that if this new evidence had been available to the ALJ, it would have been "probative to the extreme limitations that C.R.C. has in caring for herself, attending to and completing tasks, and her health and well-being." (Pl.'s Br. at 10).

In this case, the medical evidence submitted to the Appeals Council was

10

obviously "new," because it was not in existence at the time of the administrative hearing or the ALJ's decision. Nor was it cumulative. C.R.C. received minimal psychiatric treatment prior to the ALJ's decision, so the only psychiatric medical evidence available to the ALJ was a two page letter prepared by C.R.C.'s mental health therapist, Mary Tupaj.[3] (T. 502-503). Because these new psychiatric records did not exist at the time of the hearing, plaintiff also had good cause for not presenting it to the ALJ. *See Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004).

The only remaining question, then, is whether these 2015 medical records are material. New evidence is material if it is (1) relevant to the claimant's condition during the time period for which benefits were denied, and (2) shows a reasonable possibility that the new evidence would have influenced the Commissioner to decide claimant's application differently. *Id*. In *Pollard*, the Second Circuit concluded that the Appeals Council had erred in rejecting new evidence that "strongly suggests that, during the relevant time period, [claimant's] condition was far more serious than previously thought and that additional impairments existed when [claimant] was younger."[4] *Id*.

The relevant new evidence is dated from April 2015, when C.R.C. received

---

[3] This letter is undated, but Ms. Tupaj wrote that she had provided counseling services to C.R.C. for the past year, commencing on or about October 23, 2013. (T. 502-503).

[4] In *Pollard*, the ALJ cited a lack of other evidence as reason not to credit the claimant's mother's testimony that the child was very hard to manage, got into fights with teachers and other students, and started fires. *Pollard*, 377 F.3d 183, 185 (2d Cir. 2004). The Second Circuit concluded that the new evidence, which included the child's subsequent hospitalization in a psychiatric ward after threatening to kill his teacher, created a reasonable possibility that the ALJ may have reached a different conclusion if the evidence had been available. *Id.*

11

emergency psychiatric treatment after she told her mother that she was considering suicide.[5] (T. 162). C.R.C. also received in-patient psychiatric treatment after expressing suicidal thoughts in October 2015. During this period, C.R.C. was prescribed psychiatric medication for the first time. (T. 66, 79). These 2015 psychiatric records show that plaintiff had difficulty sleeping, expressed suicidal ideations, and engaged in self-injurious behavior, including attempting suicide and cutting herself. (T. 41, 55, 59, 169).

During this period, C.R.C. reported that she experienced regular nightmares and flashbacks about her accident, felt her depression symptoms worsening, and had an irregular appetite that resulted in significant weight gain. (T. 78). She also stated that she was isolating herself in her room because she felt that "[e]veryone hates me;" that she continued to experience bullying despite changing schools; and that she was becoming more and more angry about her ATV accident and her injury. (T. 37, 59, 65, 78, 85). C.R.C. also expressed her belief that home school would be a better alternative because then she would "not have to deal with other students." (T. 46, 52).

These more recent reports of C.R.C.'s mental health symptoms stand in sharp contrast to the evidence considered by the ALJ in October 2014. For example, the ALJ relied upon a November 14, 2013 teacher evaluation that indicated that C.R.C. had no problem making and keeping friends, expressing anger appropriately, respecting adults in authority, or following rules. (T. 399-406). The ALJ also relied upon this evaluation

---

[5] The new evidence also included records from February 2015, when C.R.C. received treatment for back pain. (T. 122-135). Those records are not relevant to this proceeding.

to conclude that C.R.C. had no problem knowing when to ask for help, could respond appropriately to changes in her mood, and could handle frustration appropriately. (*Id*.). The ALJ also noted that C.R.C.'s mental health therapist reported that the child was doing better socially with supportive therapy. (T. 226-27, 502-503). The therapist's only treatment recommendation was that C.R.C.'s entire family receive counseling as they dealt with the trauma of her accident. (T. 503).

The 2015 records document the belief of C.R.C.'s treatment sources that her depression and other mental health impairments stemmed from the physical, emotional, and social fall-out from her accident. (T. 37, 65, 78). However, there is no indication that C.R.C. experienced the same severity of symptoms, including thoughts of suicide and self-harm, at any time prior to April 2015. (T. 8-121). Indeed, C.R.C.'s description of her symptoms in the treatment notes reflect her belief that her depression and anger were getting worse. (T. 78, 85). Therefore, this court cannot conclude that the new evidence would have altered the ALJ's October 17, 2014 decision, even though it may indicate that C.R.C.'s ongoing struggle with depression had become more difficult at a later date. *See Ovitt v. Colvin*, No. 1:12-CV-1522 (DNH), 2014 WL 1806995, at *11 (N.D.N.Y. May 7, 2014); *see also Quinlivan v. Comm'r of Soc. Sec.*, No. 08-CV-1175 (MAD/VEB), 2011 WL 2413491 (N.D.N.Y. May 23, 2011) (Rep't-Rec), *adopted by*, 2011 WL 2295060 (N.D.N.Y. June 10, 2011) (where new evidence outside the relevant time frame arguably documented a worsening impairment, the "proper remedy would be to submit a new application for benefits").

## VII. CREDIBILITY

### A. Legal Standard

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. *See* 20 C.F.R. § 416.929; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. § 416.929(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to function. 20 C.F.R. § 416.929(c). When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating

14

and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 416.929(c)(3).

## B. Application

Plaintiff contends that the ALJ failed to articulate sufficiently specific reasons for discounting C.R.C.'s testimony about her physical limitations. (Pl.'s Br. at 10-11). In particular, plaintiff argues that the ALJ ignored C.R.C.'s testimony that she had difficulty dressing herself, preparing her hair, using a knife, carrying her books at school, and putting on shoes. (T. 267-89). However, the ALJ's credibility determination was clearly premised upon a perceived inconsistency between C.R.C.'s testimony and the record evidence. (T. 226-27). For example, the ALJ cited to treatment records showing that after being fitted with the i-limb prosthesis, C.R.C. reported that she was now able to tie her shoes, hold a bag or backpack, use a broom, hold her iPod, and brush and curl her hair.[6] (T. 486-87). The ALJ also considered the report by C.R.C.'s teacher that C.R.C. had serious problems moving and manipulating things due to the loss of her hand, but discounted this specific finding because it predated C.R.C.'s use of a more advanced prosthetic device. (T. 230). By explaining

---

[6] During the hearing, C.R.C.'s mother testified that her daughter was unable to get the full benefit of the i-limb during the school day, because the school refused to provide C.R.C. with wireless internet access, and prohibited her from using an iPod during tests. (T. 291). These external restrictions, while understandably aggravating, do not impact the ALJ's findings with regard to C.R.C.'s functional limitations or credibility.

15

her comparison of C.R.C.'s testimony with the record, the ALJ provided substantial evidence for her credibility determination.[7]

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint is **DISMISSED**, and it is

**ORDERED**, that judgment be entered for the **DEFENDANT.**

Dated: June 20, 2017

Hon. Andrew T. Baxter
U.S. Magistrate Judge

---

[7] Aside from the credibility assessment, plaintiff has not directly challenged the ALJ's consideration of the evidence that was available at the time of her October 17, 2014 decision. To the extent that such challenge is implicit in plaintiff's brief, this court concludes that the ALJ provided substantial evidence to support her determination with respect to each of the six functional domains, based upon my review of the ALJ's decision and the administrative record.